TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00149-CV






Brath, Inc. and The Glens Falls Insurance Company, Appellants



v.



GFCS, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 96-04737, HONORABLE JERRY DELLANA, JUDGE PRESIDING 






PER CURIAM


 This cause concerns the impossibility of performance of a contract. GFCS, Inc. was a
subcontractor on a public works construction project on which Brath, Inc. (1) was the general contractor. 
Brath withheld money from the contract amount due to GFCS, based on GFCS's alleged failure to
complete its subcontract on schedule. GFCS sued Brath under breach of contract and quantum meruit
theories seeking recovery of the withheld money, attorney's fees and costs. After a bench trial, the court
rendered judgment in favor of GFCS. On appeal, Brath brings six points of error attacking the legal and
factual sufficiency of the evidence to support various trial-court findings. We will affirm the trial-court
judgment.


Background



 The Pflugerville Independent School District (PISD) contracted with Brath to construct
improvements to a school. Brath subcontracted with GFCS for labor and material to install flooring, which
consisted of carpet, ceramic tile, vinyl composition tile (VCT) and base. The contract required GFCS to
complete the work by December 12, 1995. The contract also required GFCS to use a particular
Mohawk-brand carpet, which would take four to six weeks to deliver. On October 11, 1995, GFCS
placed its order for the carpet and was informed that the delivery would be made November 11, 1995;
however, Mohawk missed that delivery date and the next delivery date of December 2, 1995. Mohawk
informed GFCS that it missed the delivery dates because of defective material. GFCS attempted to
substitute carpet other than Mohawk but PISD's architect refused to accept any substitutes. Mohawk
finally delivered the carpet on December 22, 1995; GFS finished installing the carpet December 27, 1995.

 The contract also required GFCS to install VCT and base, with the same December 12
completion date. Brath rejected a bid for the floor leveling that had to be done before GFCS could install
the base and VCT. Brath attempted to do the leveling itself but failed to have the work completed by
December 12, 1995, GFCS's scheduled completion date. On December 19, 1995, Brath executed a field
change order requiring GFCS to perform the additional leveling and agreed to pay additional money to
GFCS for this work.

 GFCS completed all work by January 4, 1996. Brath withheld $7,452.00 from its
scheduled payment to GFCS. Brath did not contend that any work was defective. The amount withheld
was a per diem amount based on the delay from December 12, 1995 to January 4, 1996, calculated to
include "general condition costs" and a fifteen percent markup. The contract contained no liquidated
damages clause. The contract contained a clause providing for an extension of time if changes were
ordered. PISD withheld no money from Brath based on any contract delay.


Sufficiency of the Evidence



 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965). We will uphold the finding if more than a scintilla of evidence supports it. Crye,
907 S.W.2d at 499; In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting
a finding amounts to more than a scintilla if reasonable minds could differ in their conclusions.
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Crye, 907 S.W.2d at 499.

 When deciding an insufficient evidence point, we must consider and weigh all of the
evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629
(Tex. 1986).

Impossibility of Performance



 In its first point of error, Brath asserts that there was no evidence to support the trial-court
finding that performance was impossible. It is undisputed that the contract required Brath to use only this
particular Mohawk-brand carpet and that Mohawk failed to meet two scheduled delivery dates because
of defectively milling the carpet. GFCS's president, with seventeen years' experience in the flooring
business, testified that he decided when to place the order based on the anticipated amount of time to
deliver added to the amount of time he knew it would take to install the carpet. He testified that due to
storage and payment considerations, it would not have been customary to have ordered earlier and stored
the material. Pat Potts, a flooring material supplier with over twenty years' experience, testified that the
order was placed at a reasonable time and would have allowed timely completion if timely delivered. He 
also said that he had never heard of anyone having two defective mill runs.

 Centex Corp. v. Dalton, 840 S.W.2d 952 (Tex. 1992), discussed the application of the
doctrine of impossibility of performance. In Centex, a savings and loan holding company entered a
contract with a consultant for the payment of finder's fees for the acquisition of four thrift institutions. 
However, the Federal Home Loan Bank Board prohibited payment of that fee as a condition of the
acquisition of the thrifts. Id. at 953. The court held that the holding company's obligation to the consultant
for the payment of finder's fees was discharged by impossibility because of the bank board's prohibition. 
Id. at 954. Although the consultant argued that the holding company should have foreseen and guarded
against the possibility of regulatory changes, the court de-emphasized the aspect of foreseeability in
determining whether performance was impossible. Id. at 954-55.

 Brath relies on several distinguishable cases. In Huffines v. Swor Sand & Gravel Co.,
Inc., 750 S.W.2d 38 (Tex. App.--Fort Worth 1988, no writ), performance was possible, although less
profitable. Id. at 40. Huffines also involved testimony that the alleged impossibility, weight limits on roads,
was a common problem in the sand and gravel business. Id. In Metrocon Construction Co., Inc. v.
Gregory Construction Co., Inc., 663 S.W.2d 460 (Tex. App.--Dallas 1983, writ ref'd n.r.e.) the
contract was not impossible to perform, just more expensive. Both cases pre-dated Dalton and relied
heavily on a foreseeability analysis.

 The record shows more than a scintilla of evidence that performance of the contract was
rendered impossible. There was evidence that GFCS had done everything it could do but was prevented
from installing the carpet by an unusual event for its business. There was no evidence that it was
economically disadvantageous for GFCS to complete its contract as specified. Further, as will be
discussed in the next point of error, GFCS's subcontract work included more than carpet installation, and
Brath's actions with regard to the VCT installation would have prevented GFCS from completing its entire
sub-contract by the scheduled completion date in any event. We overrule point of error one.


Prevention of Performance


 In its second point of error, Brath asserts that there was insufficient evidence in the record
to support the trial court's finding that Brath prevented GFCS from performing the work contracted for
by the completion date. The VCT was to be completed by the same December 12 date as the carpet. 
However, the floor in those areas had to be leveled first. Brath first attempted to do the leveling itself, but
was unable to do so. Brath submitted a change order to GFCS, requiring it to do the leveling. Brath did
not submit the change order until December 19, 1995, after the December 12 completion date. Brath
failed to complete the prerequisite work necessary for GFCS to be able to install the base and VCT under
the original schedule. That is sufficient evidence that Brath prevented GFCS from timely completing the
subcontract. We overrule point of error two.

 The trial court's findings on impossibility of performance and interference with GFCS's
performance are sufficient to support the trial-court judgment awarding GFCS the amounts withheld by
Brath. Accordingly, we need not discuss Brath's points of error attacking the trial court's findings on other
aspects of the contract. (2) We overrule points three through six. We affirm the trial court judgment.


Before Justices Powers, Jones and Kidd

Affirmed

Filed: January 29, 1998

Do Not Publish
1. Glens Falls Insurance Company issued the construction bond. References to Brath include Glens
Falls Insurance Company.
2. Brath contended that there was insufficient evidence to support the trial court's finding of unjust
enrichment; its finding that Brath was indebted to GFCS for the withheld sum; its finding that Brath did not
suffer any damages; and its finding that Brath was not owed additional money over and above the withheld
amount.



to
deliver added to the amount of time he knew it would take to install the carpet. He testified that due to
storage and payment considerations, it would not have been customary to have ordered earlier and stored
the material. Pat Potts, a flooring material supplier with over twenty years' experience, testified that the
order was placed at a reasonable time and would have allowed timely completion if timely delivered. He 
also said that he had never heard of anyone having two defective mill runs.

 Centex Corp. v. Dalton, 840 S.W.2d 952 (Tex. 1992), discussed the application of the
doctrine of impossibility of performance. In Centex, a savings and loan holding company entered a
contract with a consultant for the payment of finder's fees for the acquisition of four thrift institutions. 
However, the Federal Home Loan Bank Board prohibited payment of that fee as a condition of the
acquisition of the thrifts. Id. at 953. The court held that the holding company's obligation to the consultant
for the payment of finder's fees was discharged by impossibility because of the bank board's prohibition. 
Id. at 954. Although the consultant argued that the holding company should have foreseen and guarded
against the possibility of regulatory changes, the court de-emphasized the aspect of foreseeability in
determining whether performance was impossible. Id. at 954-55.

 Brath relies on several distinguishable cases. In Huffines v. Swor Sand & Gravel Co.,
Inc., 750 S.W.2d 38 (Tex. App.--Fort Worth 1988, no writ), performance was possible, although less
profitable. Id. at 40. Huffines also involved testimony that the alleged impossibility, weight limits on roads,
was a common problem in the sand and gravel business. Id. In Metrocon Construction Co., Inc. v.
Gregory Construction Co., Inc., 663 S.W.2d 460 (Tex. App.--Dallas 1983, writ ref'd n.r.e.) the
contract was not impossible to perform, just more expensive. Both cases pre-dated Dalton and relied
heavily on a foreseeability analysis.

 The record shows more than a scintilla of evidence that performance of the contract was
rendered impossible. There was evidence that GFCS had done everything it could do but was prevented
from installing the carpet by an unusual event for its business. There was no evidence that it was
economically disadvantageous for GFCS to complete its contract as specified. Further, as will be
discussed in the next point of error, GFCS's subcontract work included more than carpet installation, and
Brath's actions with regard to the VCT installation would have prevented GFCS from completing its entire
sub-contract by the scheduled completion date in any event. We overrule point of error one.


Prevention of Performance


 In its second point of error, Brath asserts that there was insufficient evidence in the record
to support the trial court's finding that Brath prevented GFCS from performing the work contracted for
by the completion date. The VCT was to be completed by the same December 12 date as the carpet. 
However, the floor in those areas had to be leveled first. Brath first attempted to do the leveling itself, but
was unable to do so. Brath submitted a change order to GFCS, requiring it to do the leveling. Brath did
not submit the change order until December 19, 1995, after the December 12 completion date. Brath
failed to complete the prerequisite work necessary for GFCS to